(159 App. Div. 695)

ABNER M. HARPER, Inc., v. CITY OF NEWBURGH et al.

(Supreme Court, Appellate Division, Second Department. December 31, 1913.)

1. CONTRACTS (§ 93*)—RESCISSION—UNILATERAL CONTRACT.

    A contract may be rescinded for the mistake of one party only, without a showing of fraud or inequitable conduct by the other party.

    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 415–419; Dec. Dig. § 93.*]

2. REFORMATION OF INSTRUMENTS (§ 19*)—CONTRACTS—MISTAKE.

    In order to reform a contract for the mistake of one party only, there must be fraud or inequitable conduct on the part of the other party.

    [Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 74–78; Dec. Dig. § 19.*]

3. MUNICIPAL CORPORATIONS (§ 338*)—CONTRACTS—NECESSITY OF WRITING.

    Under Newburgh City Charter (Laws 1907, c. 203) tit. 3, § 4, requiring all city contracts for the expenditure of $20 and upwards to be in writing, a paving contract by the city involving more than that amount must be in writing.

    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 866, 867; Dec. Dig. § 338.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4. CONTRACTS (§ 249\*)—RESCISSION—NECESSITY OF COMPLETED CONTRACT.**

It is not necessary that there be a completed contract in order to have rescission, since a subsisting legal relation may sometimes be rescinded.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1141–1143; Dec. Dig. § 249.\*]

**5. CONTRACTS (§ 265\*)—RESCISSION.**

If the parties cannot be placed in statu quo, a contract will be rescinded only when the clearest equity demands it.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1187; Dec. Dig. § 265.\*]

**6. CONTRACTS (§ 274\*)—RESCISSION—TIME.**

The rescission of a contract takes effect, not as of the time of the decree, but of the date of an unequivocal and open declaration by the injured party that he rescinds the contract, followed, upon refusal by the other party, by a prompt application to the courts.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1202–1206; Dec. Dig. § 274.\*]

**7. MUNICIPAL CORPORATIONS (§ 354\*)—IMPROVEMENT CONTRACT—RESCISSION—TIME.**

Before serving summons on August 13th, in an action by a contractor to recover the amount of a deposit made with a paving bid, on the ground of mistake as to its terms, the contractor had served written notice of the withdrawal of its bid, with request for the return of its deposit, and on August 10th the contractor was notified that the contracts were ready for execution, but when he called on the 12th he was informed that they were not ready, and was not thereafter notified to the contrary, and on August 13th the contractor wrote to the city clerk, inquiring whether the city proposed to declare him in default for not executing a contract based on the "unfair bid," and said that in that event he would sue for reformation or rescission of the contract and a return of his deposit. *Held*, that the contractor's rescission of the contract was of the date of service of summons.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 886, 887; Dec. Dig. § 354.\*]

**8. MUNICIPAL CORPORATIONS (§ 354\*)—IMPROVEMENT CONTRACT—RESCISSION—RELIEF.**

If a street paving contract ought to be rescinded because of mistake by the contractor as to the terms of the contract, the court should not refuse the relief because the granting of it would be prejudicial to the other party, in that it would not have the benefit of the mistake by forfeiting the contractor's deposit under the contract for failure to execute the contract.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 886, 887; Dec. Dig. § 354.\*]

**9. MUNICIPAL CORPORATIONS (§ 354\*)—PAVING CONTRACT—RESCISSION—RETURN OF DEPOSIT.**

Where a deposit made by a paving contractor was made as security that he would execute the contract upon the bid being accepted, upon rescission of the contract for mistake as to its terms, the amount of the deposit might be returned to him in the exercise of the court's discretion.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 886, 887; Dec. Dig. § 354.\*]

Burr, J., dissenting in part.

Appeal from Special Term, Orange County.

Action by Abner M. Harper, Incorporated, against the City of Newburgh and others. From a judgment (79 Misc. Rep. 299, 139 N. Y. Supp.

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

1057) dismissing the complaint, plaintiff appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and RICH, JJ.

Henry Hirschberg, of Newburgh, for appellant.
Graham Witschief, of Newburgh, for respondents.

JENKS, P. J.   The plaintiff sues for relief from its mistake in transposing two items of its bid in competition for certain paving work. The mistake was not discovered by any one until after the bids had been opened and a resolution in favor of awarding the contract to the plaintiff had been passed by the city council. At trial the defendants only read in evidence the proposals and a tabulation of the various bids so as to show a difference between them. The Special Term found in accord with the plaintiff's version of the mistake, and that the mistake was not due to plaintiff's negligence, but gave judgment for the defendant. The plaintiff appeals. The learned Special Term in its opinion, after saying that it would seem that "justice and equity" required a return of plaintiff's deposit made with the bid, held that the law forbade relief. Therefore I assume that the court felt constrained to render the judgment. The proposition stated in the opinion is as follows: There was neither mutual mistake nor fraud, deceit or bad faith on the part of the defendants; the mistake was not apparent on its face, nor was the defendant's attention called to it until after the bid had been accepted and the resolution to award the contract had been passed by the common council. Under such circumstances the awarding of the work made a complete contract binding on both parties and neither could escape therefrom except upon proof of fraud or of bad faith or of mutual mistake.

[1, 2] Yet there can be rescission of a contract for unilateral mistake. The rule stated by the learned Special Term applies to reformation (Moran v. McLarty, 75 N. Y. 25), for reformation affords a contract. And consequently, when reformation is sought for the mistake of one party only, it is essential that fraud or inequitable conduct be found in the other, else the court, in determining that there is a contract at the instance of one, might be doing right to that one and equal wrong to the other when without legal fault. Pomeroy's Eq. Jur. vol. 6; Equitable Remedies, vol. 2, § 676, and note 5, citing Ames, C. J., in Diman v. Providence, W. & B. R. R. Co., 5 R. I. 130. Pomeroy (supra) says that in such a case the ground of jurisdiction is fraud of the defendant rather than mere mistake of the plaintiff. But in rescission no contract remains, for there was in the eye of the law no meeting of the minds at all. Hence the court may rescind the apparent contract for the mistake of one party only, without a finding of fraud or inequitable conduct in the other. Hearne v. Marine Ins. Co., 20 Wall. 488, 22 L. Ed. 395, cited and approved in Moffett, Hodgkins & Clarke Co. v. Rochester, 178 U. S. 373, 20 Sup. Ct. 957, 44 L. Ed. 1108; Hayward v. Wemple, No. 1, 152 App. Div. 197, 136 N. Y. Supp. 625; City of New York v. Dowd Lumber Co., 140 App. Div. 358, 125 N. Y. Supp. 394, especially citing the rule in Singer v.

Grand Rapids Co., 117 Ga. 86, 94, 43 S. E. 755; Smith v. Mackin, 4 Lans. 41; Pomeroy's Eq. Jur. vol. 2 (3d Ed.) § 870; Halsbury's Law of Eng. vol. 21, 17.

[**3, 4**] I have grave doubts whether there was a completed contract, because a contract in writing was contemplated and indeed was required by the charter of the defendant (section 4, tit. 3, c. 203, of the Laws of 1907; Dillon on Municipal Corporations [5th Ed.] § 810; Abbott's Municipal Corporations, 273), and there is no proof that any contract was ever executed or even prepared for execution. It may well be that there was a preliminary contract, or at least a legal relation arising from the bid and the resolution of award passed by the city council and approved by the mayor, which entitled the defendant to a contract. But it is not essential that there should be a completed contract before there could be rescission. Pomeroy, in his Equitable Remedies (supra, § 112) says:

"Remedies of rescission or cancellation, or those by which an instrument, contract, deed, judgment, and even sometimes a legal relation itself subsisting between two parties is, for some cause, set aside, avoided, rescinded, or annulled."

[**5-8**] Rescission involves inquiry whether the parties can be put back in statu quo. If this cannot be done, the court affords such relief only when the clearest and strongest equity imperatively demands it. Grymes v. Sanders, 93 U. S. at 62, 23 L. Ed. 798. Any legal relation that existed is regarded as subsisting until rescinded, but the rescission is not as of the date of the decree therefor, but of the date of the "unequivocal and open declaration of the injured party that he demands a rescission, followed, upon a refusal, by a prompt application to the courts." Bispham's Principles of Equity, § 472, citing Oakes v. Turquand, L. R. 2, H. L. 325. The complaint was not served until September 13, 1912; but the summons was served, and thus the suit was begun on or about August 13, 1912. Previous to that time the plaintiff had served a written notice of withdrawal of its bid, accompanied with a request for a return of its deposit. On August 10, 1912, the plaintiff had been notified that the contracts were ready for execution and had been requested to call at the office of the city clerk to sign the contract and to file the bond within 10 days, but when the plaintiff had called, on August 12, 1912, and asked to see the contracts, he had been informed that they had not been prepared and were not ready. And he had not thereafter been notified to the contrary. On or about August 13th, the plaintiff wrote to the city clerk a detailed statement of the matter and inquired whether the city proposed to declare the plaintiff in default if it did not execute a contract based on the "erroneous and unfair bid" within 10 days, and had also written in that event the plaintiff would invoke the court for reformation or rescission with a return of the deposit, and for incidental injunctive relief. And no answer had been made to that communication—indeed, none was ever given. So that it seems to me that rescission, if decreed, might well be as of the date of the service of the summons under the rule cited from Bispham (supra). Thus when the summons was served the plaintiff had submitted its bid and had deposited its

certified check. And the defendant had adopted a resolution which had been approved by the mayor, that the contracts be awarded to the plaintiff, and had notified the plaintiff to execute the contract and to file its bond within 10 days. And the mistake had been called to the attention of the city authorities and they had been requested to permit a withdrawal of the bid and to return the deposit. If the plaintiff had complied with the demand that it execute a contract in the terms of its erroneous bid and had filed its bond, the city would have secured a contract for doing the work at a price less than that named in the contract subsequently made with another, and the work when done would entail a loss to the plaintiff upon the entire contract. Or, if the plaintiff had refused to execute a contract, the city could have forfeited the deposit. In fine, the city would have had the benefit of the mistake. But it is not apparent that it would have had any other benefit. It seems to me that, if the court in its discretion determined that there should be a rescission for that mistake, it should not refuse that relief because it was prejudicial to the defendant in that it could not have the benefit of the mistake. Even if we assume that the date of any rescission should be that of the service of the complaint, it does not appear that the city would be in any different position, for it had then but made the contract with a third person and had declared a forfeit of the plaintiff's deposit. In other words, it had acted formally within its supposed rights as arising from the bid, the acceptance and the award, and the plaintiff's omission to execute a contract.

[9] What disposition should be made of the deposit? The proposal required that the bid should be accompanied by either a certified check or cash, which would be considered as "a guaranty that the bidder will execute the contract and furnish said bond within 10 days after notice that the contract has been awarded to him," provided that all deposits save that of the successful bidder would be returned, but if that bidder "shall refuse or neglect to execute the contract and furnish said bond within 10 days as aforesaid, the amount of the deposit made by him shall be forfeited to and retained by the city of Newburgh as liquidated damages for such neglect or refusal; but if he shall execute the contract and furnish said bond within the time as aforesaid, the amount of his deposit will be returned to him." Thus, as the deposit was security that the bidder would execute the contract, it was contemplated that there would be a legal obligation to execute a contract consequent upon bid and acceptance. The deposit was to be forfeited as liquidated damages for neglect or refusal to fulfill such obligation. But if the court decide that there should be rescission, then there is no legal obligation upon the plaintiff to contract, and it would seem inequitable that the defendant should have liquidated damages for breach of an extinct obligation. Even though the contract as awarded entailed a greater expense upon the city than if the city could have held the plaintiff to a contract upon his mistaken bid, it must be established first that in the eye of the law the defendant was entitled to such contract from the plaintiff.

I see no legal reason, then, why a court of equity, in the exercise of its discretion, could not have afforded rescission and a refund of the

deposit within the principles of City of New York v. Dowd Lumber Co., 140 App. Div. 359, 125 N. Y. Supp. 394; Moffett, Hodgkins & Clarke v. Rochester, 178 U. S. 373, 20 Sup. Ct. 957, 44 L. Ed. 1108. Board of School Commissioners of City of Indianapolis v. Bender, 36 Ind. App. 164, 72 N. E. 154, is quite in point. I think that there should be a new trial whereat the court is free to award such equitable relief, in its discretion, as it deems due to the plaintiff. I do not decide that the plaintiff is absolutely entitled to it, for I have no intention to fetter the court. The learned Special Term relied largely upon City of New York v. Seely-Taylor Co., 149 App. Div. 98, 133 N. Y. Supp. 808, affirmed 208 N. Y. 548, 101 N. E. 1098, on opinion of McLaughlin, J., and this case is also cited by my Brother BURR. In that case the contractor, as in this case, erred in his figures and refused to execute a contract. But that case was an action at law against the contractor and his bondsman for damages measured by the difference between his bid and that of the next lowest bidder who became the contractor, and the city was dismissed, for the court held that the damages were limited to the deposit made with the bid. In the opinion it was said that there was a legal obligation upon the contractor, his bid having been accepted, to execute a contract. If this litigation was like unto that case, and it appeared that this contractor had but refused to execute a contract and that the charter provision as to the deposit had been similar to the charter provision in this case, then the expression might be applicable. But in this case the contractor seeks affirmative relief in the equity side of the court against any existing or apparent legal obligation to execute a contract, and if the court grants such relief I fail, as I have said, to perceive why he must be held in damages as for a breach of that obligation which would not exist in the eye of the court. In fine, this contractor seeks the relief which the court in the City of New York v. Seely-Taylor Co. Case (supra) says might have been sought, but was not, by the contractor in that case. See 149 App. Div. page 102, 133 N. Y. Supp. 808.

The judgment must be reversed and a new trial must be granted. costs to abide the final award of costs

THOMAS, CARR, and RICH, JJ., concur. BURR, J., concurs in part in separate memorandum.

BURR, J. I concur in the opinion of the Presiding Justice, that plaintiff is entitled to a rescission of the contract upon the ground of excusable mistake on its part.

The mistake was discovered on the 7th of August, and the attention of the mayor and several of the city council was called to it upon that day. The resolution awarding contract to plaintiff, although adopted by the city council on the evening of August 6th, was not approved by the mayor until August 9th. I think that the contract could not be said to be *awarded* until then. I think also that the plaintiff waived the preparation of the formal written contract and that it is not entitled to relief because no such contract was prepared and tendered for execution. I am not prepared to hold, however, that although entitled

to be relieved from its contract, it is entitled to the return of its deposit. Defendant, the city of Newburgh, was authorized by law to require such deposit. Laws of 1907, c. 203, tit. 3, § 23. The acceptance of the bid by the common council and the approval of its resolution by the mayor gave rise to a condition exactly within the terms of the statute. Until relieved from its obligation, either by the action of the parties or by the judgment of a court of competent jurisdiction, it was plaintiff's duty to "take and enter into the contract." If relieved in either manner, and certainly if relieved in the latter way, the sum must be deemed liquidated damages for its default. City of New York v. Seely-Taylor Co., 149 App. Div. 98, 133 N. Y. Supp. 808, affirmed on opinion of McLaughlin, J., 208 N. Y. 548, 101 N. E. 1098.

I would be recorded, therefore, as concurring in the result only so far as the rescission of the contract is concerned.